Opinion filed July 25, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00102-CV

_____

## IN RE WAYNE A. MONTGOMERY

**Original Mandamus Proceeding**

## M E M O R A N D U M   O P I N I O N

This mandamus proceeding originates from a pending divorce action between Relator, Wayne A. Montgomery, and Real Party in Interest, Jean E. Montgomery. Wayne has filed a petition for writ of mandamus requesting that we order the Honorable Jason Cashon, the presiding judge of the 266th District Court in Erath County, to (1) make certain findings, (2) sign his proposed final divorce decree, and (3) pronounce that the parties are divorced. We conditionally grant Wayne's petition in part, and we deny it in part.

## I. *Factual Background*

Wayne filed a petition for divorce from Jean in August 2023. In November 2023, Wayne and Jean signed a final decree that they intended to submit to Judge Cashon; however, prior to Judge Cashon's approval of the decree, Jean wished to revoke her signature on and approval of the decree because an issue arose regarding one of the properties that the parties owned (the Florence property). The parties subsequently agreed to attend mediation. On February 26, 2024, Wayne and Jean, along with their attorneys of record and the mediator, signed and agreed to be bound by an irrevocable mediated settlement agreement (MSA) that settled all claims and controversies between them in the pending divorce action.

The MSA provides in bold and conspicuous capital letters, as it should, that it was enforceable and not subject to revocation unless the trial court declined to enter judgment on the agreement pursuant to Section 153.0071(e-1) of the Family Code.[1] Also in bold and capital letters, the MSA "confirm[ed] and acknowleg[ed] that each party has freely and voluntarily entered into and executed [the MSA]" and that "there was no duress or undue influence exerted by" the mediator, the attorneys, or any party during the mediation. The parties mutually agreed to divide their marital estate, and their property division was listed in an attachment to the MSA that was incorporated into it. The MSA provides that either party could use the MSA as a basis for a motion to enforce and it recited that Wayne would draft the necessary final divorce decree within ten days of the MSA's execution unless otherwise agreed

---

[1]As Wayne notes in his petition, this section and the exception within it only applies to SAPCRs. The applicable Family Code section here, Section 6.602, does not include the same or a similar exception. Instead, Section 6.602(d) only allows a party to *object* to a trial court's referral of a case to mediation if family violence has been committed. Further, unlike Section 153.0071(e-1), Section 6.602(d) does not permit a trial court to decline to enter judgment on the MSA in certain circumstances. TEX. FAM. CODE ANN. § 6.602(d) (West 2020), § 153.0071(e-1) (West Supp. 2023) (the trial court may decline to enter judgment on the MSA if it finds that certain specific circumstances exist). Therefore, if the MSA signed by the parties in this case complies with the requirements of Section 6.602(b), the agreement is binding and enforceable without a *statutory* exception.

to by the parties. The MSA also provides that, should either party intend to dispute any term of the agreement, they must schedule a teleconference with the mediator to discuss their concerns and to interpret the MSA's terms before seeking court intervention.

On March 4, Wayne filed a "Motion for Entry of Final Decree of Divorce" and requested that Judge Cashon sign "the Final Decree of Divorce" he submitted. In support, the motion stated that the parties had signed and approved an MSA, and that Jean's attorney had signed the proposed final divorce decree submitted to the trial court by Wayne. Wayne's proposed divorce decree, which was signed by everyone but Jean, was attached to his motion. The "Motion for Entry of Final Decree" was set for a hearing on March 18.

At the hearing on his motion, Wayne testified that an agreement was reached for the division of the parties' marital property and that all parties had signed and approved the MSA, and he requested that Judge Cashon "grant this divorce and approve this final decree of divorce, which is [sic] culminated in the -- from the [MSA]." Wayne testified that he had access to snacks, water, and restrooms, and that he was free to leave at any time during the mediation, and he stated that he did not "hear any type of duress argument" from Jean, her attorney, or the mediator during the mediation.

Jean testified and agreed that she signed the MSA; however, she stated that she signed it under duress—economic duress, physical duress, and "[p]sychological duress." Jean was combative and, at times, vague when her attorney inquired about her claims of duress, and she complained about the quality of his representation while he questioned her. She criticized her attorney during his questioning and said that, if he had taken the time to meet with her, they could have discussed this "background."

3

Regarding her claim of economic duress, Jean testified that she would have filed for divorce first, but "Wayne took [her] retirement money" and placed it in an account that she did not have access to. She also testified: "When my assets to be able to fight [Wayne] on this have been taken from [me] and no one calls him to accountability, it's economic distress for me." For physical duress, she stated that Wayne was on probation "for running drugs" when they first met and that she "know[s] what he's capable of doing." She testified that he said, "more than once in the past year," that if she causes him "any drama, [she] will not be here." However, she also testified that she is "not afraid of [Wayne]," that she sleeps with a ".35" and that she can take care of herself. She stated that, "in the back of [her] mind, that's the physical threat. That is in the background." Jean did not present any evidence as to the alleged "psychological" duress.

Jean and her attorney then began arguing about how much contact they had during the attorney's representation. In the midst of their ranting, Judge Cashon eventually intervened and ended the hearing before Jean's testimony had concluded. The following exchange occurred:

> THE COURT: All right. I've heard enough. I'm [done] with this. I'm not going to approve it. I'm going to set it for a bench trial. We'll let the chips fall where they may.
>
> [JEAN MONTGOMERY]: All I wanted was --
>
> THE COURT: You can step down and you can be quiet. I've heard enough. You probably want to hire another lawyer too.
>
> [JEAN MONTGOMERY]: Well, I really do feel like I need to.
>
> THE COURT: Ms. Clements.
>
> [WAYNE'S ATTORNEY]: Yes, sir, Your Honor.
>
> THE COURT: Get with the court coordinator, get another final setting and I'll get it signed and entered and we'll send it out.

4

[WAYNE'S ATTORNEY]: Yes, sir, Your Honor.

THE COURT: Here. You can have this piece of paperwork back. I don't need that.

(End of proceedings)

Wayne filed this petition for writ of mandamus, alleging that Judge Cashon abused his discretion by "disregarding" the MSA and refusing to sign his proposed divorce decree. We issued a stay of the proceedings pending our disposition of Wayne's petition.

## II. *Standard of Review*

Mandamus is an extraordinary remedy that is issued at the discretion of the court. *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 247 (Tex. 2021) (orig. proceeding). "It is meant for circumstances 'involving manifest and urgent necessity and not for grievances that may be addressed by other remedies.'" *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 57 (Tex. 2019) (orig. proceeding) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)). To obtain mandamus relief, the relator must show that (1) the trial court clearly abused its discretion and (2) the relator does not have an adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when its ruling is arbitrary and unreasonable or is made without regard for guiding legal principles or supporting evidence. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). "Similarly, a trial court abuses its discretion when it fails to analyze or apply the law correctly." *Id.*; *see also In re Geomet Recycling LLC*, 578 S.W.3d 82, 91 (Tex. 2019) (orig. proceeding).

Mandamus relief is available if a trial court erroneously refuses to enter judgment based on an enforceable MSA. *In re Lee*, 411 S.W.3d 445, 450 n.7 (Tex.

2013) (orig. proceeding). Additionally, mandamus relief is available when a trial court erroneously sets aside an enforceable MSA. *In re Torres*, 688 S.W.3d 359,368–69 (Tex. App.—Dallas 2024, orig. proceeding); *In re Young*, No. 12-18-00341-CV, 2019 WL 141380, at *1 (Tex. App.—Tyler Jan. 9, 2019, orig. proceeding) (mem. op.) (mandamus relief is available for trial court's refusal to enter judgment on an MSA because the parties will have lost the benefit of a settlement if they are required to expend resources to appeal the error; the same is true when a trial court erroneously sets aside an MSA); *In re Lauriette*, No. 05-15-00518-CV, 2015 WL 4967233, at *5 (Tex. App.—Dallas Aug. 20, 2015, orig. proceeding) (mem. op.) (same).

## III. *Analysis*

In his petition, Wayne contends that Judge Cashon abused his discretion when he (1) "disregarded a binding [MSA] with no evidence of duress or coercion," and (2) refused to sign the divorce decree Wayne submitted "that was substantially in compliance with the parties' binding [MSA]." He requests that we order Judge Cashon to "rescind [his] refusal" to find the MSA valid, to sign the proposed divorce decree Wayne submitted, and to pronounce that the parties are divorced based on the terms of the MSA.

Jean responds and reiterates that she signed the MSA under duress, albeit in several respects. Alternatively, Jean argues that the MSA is "too ambiguous" to determine whether the "proposed decree substantially complies with the terms of the MSA." In this regard, Jean contends that (1) neither the MSA nor the proposed divorce decree address how the proceeds from the sale of the Florence property will be distributed, and (2) the MSA states that Wayne is "indemnified from any liability for past, present or future on the Florence home" and that Jean "will be 100% responsible for all legal bills regarding the Florence lease." Jean argues that, as a

6

result, the MSA is ambiguous because the "proposed divorce decree attempts to fill in the MSA's missing sales proceeds information, but still remains ambiguous and unclear regarding the Florence property."

In his reply, Wayne avers that Jean improperly raises the issue of ambiguity in a mandamus proceeding. Wayne contends that, consistent with the MSA, the proper procedure to raise that issue would have been to confer with the mediator, as the MSA requires, or for Jean to file a motion for clarification rather than seeking court intervention.

A. *Mediated Settlement Agreements in Divorce Proceedings*

It is well-settled that an MSA in a suit for the dissolution of marriage is enforceable and binding on the parties when, as here, the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

FAM. § 6.602(b); *Highsmith v. Highsmith*, 587 S.W.3d 771, 774–75 (Tex. 2019); *Milner v. Milner*, 361 S.W.3d 615, 618–19 (Tex. 2012). If the MSA meets these requirements, "a party is entitled to judgment on the [MSA] notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." FAM. § 6.602(c). "The trial court does not have authority to modify the MSA, order the parties to modify the MSA, or enter a decree that varies from the terms of the MSA." *Torres*, 688 S.W.3d at 366 (citing *In re Marriage of Joyner*, 196 S.W.3d 883, 890–91 (Tex. App.—Texarkana 2006, pet. denied)).

However, a party may challenge the validity of a Section 6.602 MSA through applicable contract defenses, such as illegality, fraud, duress, or coercion. *See In re*

*Marriage of Coppedge*, No. 11-13-00116-CV, 2014 WL 4662373, at \*4 (Tex. App.—Eastland Sept. 18, 2014, no pet.) (mem. op.); *Levisay v. Ferguson*, No. 11-10-00343-CV, 2012 WL 5439258, at \*3 (Tex. App.—Eastland Nov. 1, 2012, no pet.) (mem. op); *see also Torres*, 688 S.W.3d at 366 and n.1; *In re Marriage of Moncur*, 640 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2022, no pet.). "Duress" in this context occurs "when, due to some kind of threat, a person is incapable of exercising her free agency and [is] unable to withhold consent." *In re Lechuga*, No. 07-15-00088-CV, 2015 WL 2183744, at \*2 (Tex. App.—Amarillo May 7, 2015, orig. proceeding) (quoting *In re D.E.H.*, 301 S.W.3d 825, 829 (Tex. App.—Fort Worth 2009, pet. denied)); *see Weinberg v. Baharav*, 553 S.W.3d 131, 134 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("While there are several applications and definitions of duress, '[A] common element of duress in all its forms . . . is improper or unlawful conduct or [the] threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment.' The threat must also be imminent.") (internal citations omitted). "[D]uress must be established based on the conduct of the party accused of duress, not the emotions of the purported victim." *Weinberg*, 553 S.W.3d at 134.

B. *Judge Cashon Abused his Discretion as to the MSA*

Here, during the hearing on Wayne's motion, Jean testified that she signed the MSA under duress and she presented some testimony on the issue; however, Judge Cashon intervened, concluded the hearing prematurely, and announced that a final hearing would be set for this case. In this regard, Judge Cashon did not rule on or make any findings regarding whether (1) the MSA is enforceable, or (2) Jean had properly and sufficiently challenged the validity of the MSA based on her claims of duress before setting this matter for a final hearing. Indeed, one or both findings was essential because, without sufficient evidence of duress, the MSA between the

parties is binding on them. *See* FAM. § 6.602(b); *Torres*, 688 S.W.3d at 364; *Coppedge*, 2014 WL 4662373, at *3–4.

Therefore, Judge Cashon clearly abused his discretion when he failed to (1) rule on the issues stated above prior to setting the case for a final hearing and (2) state a basis for his determination that the case should proceed to a final hearing notwithstanding the MSA.[2] Wayne does not have an adequate remedy by appeal to cure Judge Cashon's abuse of discretion because Judge Cashon set the matter for a final, and presumably contested, hearing. *See Torres*, 688 S.W.3d at 368–69; *Young*, 2019 WL 141380, at *1; *Lauriette*, 2015 WL 4967233, at *5. Accordingly, we conditionally grant Wayne's mandamus petition in part on this basis.

### C. *Judge Cashon did not Abuse his Discretion when he Refused to Sign Wayne's Proposed Final Divorce Decree*

Nevertheless, Judge Cashon did not abuse his discretion when he refused to sign Wayne's proposed divorce decree because the decree, as submitted, deviates in various respects from the terms of the MSA.[3] As we have said, the trial court does not have the authority to enter and sign a judgment, including a divorce decree, that

---

[2]In her response, Jean contends that the MSA contains ambiguities. We note that the trial court cannot enter judgment based on the terms of an MSA if there is an unresolved dispute concerning a possible ambiguity in the MSA. *Cf. Rustic Nat. Res. LLC v. DE Midland III LLC*, 669 S.W.3d 494, 500, 503 (Tex. App.—Eastland 2022, pet. denied, mtn. for reh'g filed). The trial court must first consider whether an ambiguity exists, and if one does, it must either address and resolve the issue or refer the matter to the mediator to clarify or resolve. *Loya v. Loya*, 526 S.W.3d 448, 450 (Tex. 2017); *Milner*, 361 S.W.3d at 619, 622; *Maraio-Wilhoit v. Wilhoit*, No. 11-18-00312-CV, 2021 WL 389243, at *3 (Tex. App.—Eastland Feb. 4, 2021, no pet.) (mem. op.). The MSA in this case requires that if a dispute arises after the MSA is executed, the parties must confer with the mediator in an effort to resolve the dispute before seeking court intervention.

[3]At the conclusion of the hearing on Wayne's motion for entry of the proposed decree, Judge Cashon stated, "I've heard enough. I'm [done] with this. I'm not going to approve it. . . . You can have this piece of paperwork back." As a result, Judge Cashon was somewhat vague as to which document he was referring—the divorce decree or the MSA. Given that the hearing pertained to Wayne's motion to enter the proposed decree and that Wayne's attorney presented the proposed decree to Judge Cashon before asking him to grant the divorce and "approve *this* final decree of divorce," we could presume that Judge Cashon was referring to Wayne's proposed decree.

varies from the terms of the MSA. *Torres*, 688 S.W.3d at 366; *Joyner*, 196 S.W.3d at 890–91; *Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.—Dallas 2004, no pet.).

Wayne argues that the final decree "substantially complies" with the terms of the MSA and thus substantial compliance is sufficient. We disagree. His proposed decree includes several additional terms that were not included in the MSA, including language for the payment of and indemnification for the listed debts and the sale of the parties' residences, notice provisions, the assessment of attorneys' fees, and language for how community income will be treated or allocated for income tax purposes. In the absence of consent from all signatories to the MSA, which is lacking here, one party cannot later include additional terms or conditions in the parties' formal settlement agreement, the final judgment, or the final decree that are beyond the scope of the MSA, because the trial court's final judgment must be rendered in *strict compliance* with the MSA's expressed terms and conditions. *Wilhoit*, 2021 WL 389243, at \*4 (citing *Milner*, 361 S.W.3d at 616); *Joyner*, 196 S.W.3d at 890–91. Accordingly, Judge Cashon did not abuse his discretion when he refused to sign the final decree submitted by Wayne because it did not strictly conform to the terms of the MSA that the parties signed. Accordingly, we deny Wayne's mandamus petition in part on this basis.

D. *Conclusion*

We conclude that Judge Cashon abused his discretion when he failed to (1) rule on the enforceability of the MSA and the related duress complaints prior to setting this case for a final hearing, and (2) state a basis for his determination that this case should proceed to a final hearing notwithstanding the MSA. We further conclude that Wayne lacks an adequate remedy by appeal to cure Judge Cashon's abuse of discretion.

Therefore, we direct Judge Cashon to conduct a hearing and entertain evidence regarding the enforceability of the MSA and the duress complaints raised by Jean and make necessary findings before he may grant the parties' divorce and dispose of their marital property.[4] In this regard, before the underlying divorce proceeding may conclude in the trial court, the record on the MSA's enforceability and the duress complaints must be developed and any alleged ambiguities in the MSA must be resolved. As such, Judge Cashon must determine and make findings as to whether: (1) the MSA is enforceable, and if not, on what ground(s) it should be set aside; (2) Jean executed the MSA while under any form of duress as she claims; (3) the substance of the proposed final decree submitted by Wayne is consistent with the MSA's terms and conditions as stated in the agreement; and (4) ambiguities exist in the MSA and, if so, whether the parties first consulted with and sought clarification from the mediator on this issue prior to seeking court intervention as required by the MSA. If Judge Cashon finds that the MSA executed by the parties is enforceable but that the decree as presented by Wayne is inconsistent with the MSA, he must then direct the parties to submit a proposed decree that is consistent with the MSA's terms.

## IV. *This Court's Ruling*

For the reasons stated above, we conditionally grant Relator's petition for writ of mandamus in part, and we deny it in part. A writ of mandamus will issue only if Judge Cashon fails to comply with this court's directives **on or before September 23, 2024**.

---

[4]By this opinion, we do not decide or express whether Jean's testimony sufficiently established that she signed the MSA under duress. We note, however, that Jean did not testify about any alleged "psychological duress," nor did she provide any evidence that indicated an imminency of any physical threat.

We further vacate the order that we issued on April 24, 2024, that stayed the proceedings in the trial court below.

W. STACY TROTTER

JUSTICE

July 25, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.